Good morning, Your Honor. My name is William Fitzgerald. I'm here on behalf of the appellant, the estate of James Grizzard. May it please the Court. I'm going to ask you to stand up and speak up. Yes, Your Honor. We're here this morning to ask the Court to reverse the decision of the trial court in granting summary judgment on the grounds that the Court overlooked material issues of fact that were in dispute, that it followed an erroneous procedure in failing to follow the Steltex and Nissan v. Fritz case from the Ninth Circuit, and that it applied the substantive law incorrectly. Initially, I would point out that in the Court's order, it noted that certain of the affidavits had been stricken, and we had agreed at the time of the argument that certain sections of Mr. Goodwin's affidavit, as well as Mr. Cho and Mr. Campbell's affidavit, could be stricken. But these in no way lessened the opposition that we put forward at the time of the summary judgment motion. We had other affidavits from Mr. Imai, additionally from Mr. Goodwin, from Mr. Love, as well as deposition testimony specifically from the defendant, Mr. Terada. And this deposition testimony was very strong in showing the existence of the basic fraud that we're complaining about here, because in this testimony, Mr. Terada admitted that he never had any intention of giving Mr. Grizard his share that he had been promised at the time the Sowaso Corporation had been set up. Let me tell you what my questions are here. It seems there's no doubt, at least if you take the record as offered, that there's some monkey business going on somewhere. I don't know what. But the real question is, can you sue under RICO? Yes, Your Honor. And it seemed to me that all the case law points to the answer being no, because he's really suing for an injury that is an injury to the corporation. And that's an issue that I think you're going to – a hurdle that you'll need to overcome before we even get to all those other issues. So if you could address that, it would be helpful. Yes, Your Honor. The interesting part about that is that the district court completely ignored that argument that was raised by the defendants. In fact, the defendants brought this motion based on three grounds. Number one, that it was a derivative action and there was no injury to Mr. Grizard. The injury was to the corporation. Number two, that Mr. Grizard was not the target of the wrongful conduct. And number three, the statute of limitations. We addressed that in the motion below, and specifically as to this question of a derivative lawsuit not being recognized by RICO. That is correct, generally speaking, that this is a derivative action that is not recognized under RICO, and a derivative action, the damage is to the corporation. But as we pointed out, this was a specific injury to Mr. Grizard himself personally. It's a very small corporation. There are only four or five shareholders. The corporation doesn't, has not listed or doesn't issue, never issued any dividends. The point of the fraud was that they promised him at the time that he helped them get this corporation and make this golf course, they promised him a share. Whether initially it was 10% and later reduced to 2.5% is a matter that's actually neither here nor there. The fact is that he's still one of several, even though a small number of shareholders. And if you look at the complaint, it keeps referencing the defrauding of Swaso. So the only way that he could sue, it seems to me, is if you can come under the direct injury exception. Well, yes, Your Honor. The references to Swaso is to the enterprise. Swaso is not either a plaintiff or a defendant. The defendants would like to try to make this into a derivative suit and make Swaso the victim. We've never claimed they were the victim. What we are claiming is that the three. But the complaint complaint, that's what they talked about, the references in the complaint. Well, yes, Your Honor. But they're the ones that characterize it. You wrote the complaint. Yes, Your Honor. Okay. What the complaint says is that they did all of these things. They used Swaso's money. They misappropriated Swaso's money. They misapplied Swaso's money. They sent Swaso's money here, there, and the other place. And they did this through the conduct of a criminal enterprise, that being Swaso being the enterprise. They, the defendants, were conducting and committing the predicate acts of RICO in conducting the affairs of the enterprise Swaso. So Swaso has really no place in this, either as victim, defendant, plaintiff. It is just the mechanism, the mechanics, the enterprise, as defined under the RICO statute, that is being used to allow them to take the money and divide it up among the three of them, Yakumata, Terada, and Imai, the three people. With the other shareholders, I think they're Sasho and Norino. Yes, Your Honor. They have exactly the same claim that your client pursues. Right. But as a claim. But they can't because they're barred by the statute of limitations. Yes, Your Honor. Well, doesn't that suggest then the claim is that of a shareholder, not a direct claim? Well, the point is that the purpose of this rule against having derivative suits under RICO is that there not be a multiplicity of suits, that one shareholder brings it one time and another brings it another time and another brings it another time. And what I pointed out, even though Sasho and Norino have the same problem that Grizard did, that the rule has no validity anymore because the rationale isn't there. Do you have any authority to support the proposition that if the statute's run on other potential claimants, it's okay for one claimant to bring a derivative action in his own name? Your Honor. Or what would otherwise be a derivative action? Well, once again, we say that this is not a derivative action. And I think I did cite some cases in my brief that said if the rationale for the rule isn't there, there's no reason to apply that rule to this. But getting back again, I think there's only one mention at one point in the complaint where it says that Swaso did not issue any dividend. And that's true, they didn't. And the point, though, is that Grizard had an entitlement because of what he did to make this organization come into being, getting the permits and allowing the golf course to be built. He was entitled to a share. They never issued any dividends. They divided the pie up among themselves. And they never gave him his share of the pie. They misappropriated the money, probably at least $1.5 million that's clear on the record, without even going into the construction cost. And they divided that up between Hyakumata, Terada, and Imai. And they didn't give it to Grizard. And that's a direct injury to him. It's not a derivative action. He had a. Suppose the company simply retained the money. Suppose nothing had been siphoned off. The money was just sitting there. Would he have a claim of action against these individuals? Well, if they hadn't siphoned the money off, then obviously we wouldn't have a RICO claim. And perhaps he would have some sort of derivative claim at that point. But the whole basis of our complaint is that they had a scheme. It seemed to me that if I went back to Sparling, which is a case I think everybody cited here, and that the Sparlings made the same argument that your client did, the Sparlings argued that their harm is not derivative but direct. And they say this argument has no merit. They, too, were a shareholder. And the Ninth Circuit said that a shareholder doesn't have standing to bring a derivative claim because, in fact, the harm is to the company, not to the shareholder. So I'm not sure. And we haven't overruled that. So I don't. And it's not based on numerosity, in other words, few shareholders or large shareholders. So I'm not sure why your client would be any different than the Sparling. Well, I think that Sparling, as well as all the cases that Sparling talked about and cited, said unless there is an individual harm. For example, there were cases that we cited in which there was a separate agreement. There was one case in which one of the entities was considered to be a third-party beneficiary outside of the context of the corporation. And that's what we keep coming back to. That if this was a derivative action and if we recovered all this money for the corporation, it would just be split up by the bad guys who had been conducting the criminal activity. And that's, again, why the rationale doesn't hold here because this was the result of being completely cut out from his share of the corporation. If this was to be done as a derivative action, then the money would come back and it would be split up between Giacomata, Tirada, and Imai, who are actually the ones committing the bad acts and dividing up the money. You've acknowledged that your client is only entitled to a certain percentage. Yes, sir. Let's say a million dollars is siphoned off. Your client doesn't claim entitlement to a million dollars, does he? No, sir. He claims entitlement to his percentage share of that. Yes, sir. Percentage share is his shareholding interest. So his entitlement seems to run as his interest as shareholder. Yes, but the point is that he was promised this share as a shareholder, yes. But he's the only one that's being denied this share. Sasho is being denied and Tenorio is being denied. All I can do is go back to ask you to take a look at my briefer where that case said that since Sasho and Tenorio cannot bring an action now because the statute of limitations has passed, the rationale against allowing Grisard to bring it just isn't there. And so it's basically that Grisard was entitled to a share. This was his piece of the pie. They divided the pie up secretly among themselves to allow it to make it into a derivative action and just get the money back to give back to the corporation and just allow them to divide up the money that they already stole from the corporation. Do you want to reserve the remaining time for rebuttal? Thank you. We'll take that last point and ask Mr. Turata's lawyer about that. Take care. Good morning. My name is Eric Smith and I represent Mr. Turata and Hayokumata. In his complaint, Mr. Grisard makes a lot of colorful allegations of theft and international money transfers. However, in a summary judgment motion that was made four years after the beginning of the litigation, Rule 56 requires that Grisard put forth some evidence to show and in support of the allegations. Let's focus on what was really at issue in that motion. Did you – what did you challenge in your summary judgment motion? Well, first of all, we put in evidence to show that the Turata parties, as we call them, did not commit any violations. They did not do anything wrong. And so on each of the allegations in the complaint where they were alleged to have misappropriated money, alleged to have taken overstated construction costs and transferred money out the back door to Japan, we submitted a lot of facts to show that did not happen. Let me ask you – I don't want to waste our time here. It seems to me pretty clear that looking at your motion for summary judgment, the argument identified certain identifiable issues as being brought to the attention of the Court. Those weren't what the Court ruled upon. That is correct. What we looked on – Isn't that a problem? For us? Yes. I don't believe so. Can you get summary judgment on an issue that isn't moved on? We did not get summary judgment on those particular issues. Those issues of the facts were just to show that the allegations were incorrect. What we moved on was on the fifth element of a RICO cause of action that Mr. Garzard could not show an injury to himself in his business or his person. Therefore, he had no standing. That was the first one. The second issue that we raised in the summary judgment, that he was not the intended target of any criminal acts. And we presented that. The third one was that the statute of limitations had run on these particular acts because Mr. Garzard had been an incorporator, director, shareholder. He was a legal counsel from 1985 up to the time that the complaint was filed. Well, anyway, the Court didn't rule on that. The Court noted it in the footnote. It did not rule. But what the Court had sufficient evidence before it to show that in the complaint itself, in the complaint, Mr. Garzard said that the victim was Suwaso. He never alleged that. That's the standing argument. That's the standing argument. Why don't you focus on that? Pardon me? Why don't you focus on the standing argument? All right. On the standing argument, that as a matter of law, if there is nothing in the complaint to show that Mr. Garzard was the intended target or that Mr. Garzard suffered any injury to his business or property, we could have rested on pointing that out to the Court and say it's up to Mr. Garzard now to show where in his complaint he has alleged that he has standing. And Mr. Garzard did not do that. There was no evidence submitted in any fashion to state that Mr. Garzard had standing or he was the intended party. So with that, if he didn't show that, then you're saying the district judge is correct in that the plaintiff did not show any damage in one of the elements of the RICO claim? That is correct. That's really what's before us, I think. And we could have stopped right there. Stopped right there and said to the plaintiff, show us some evidence in support of those allegations, because the allegations do not establish a cause of action. But we went farther than that, you see. We went farther to show that Mr. Garzard's involvement in this corporation caused him to be a person that knew or should have known that all of these allegations that are in the complaint did not happen or that they had occurred before 1991. That was some eight years before the complaint was filed. And so in his position as the person that people went to for Suwasu Corporation, he knew or should have known that these problems were there if they in fact were there. In 1991, Deloitte Touche did a financial report in that financial report. What are you asking? I mean, the district court didn't rule on that. The district court did not rule on that, but we have presented evidence to show that the facts themselves, all of the facts did not support the allegations that were made. The question is, so what? I mean, in other words, so I think you're missing our point. You moved for summary judgment on three grounds. Three grounds, yes. Do you want to wait until I finish my question? You moved on three grounds. The district court basically made a global statement that they didn't prove any element of the RICO claim. But the only one that you moved on and the only one that they were, in terms of substantive, that they were compelled to answer was standing and the direct target question. Because those were the only two substantive grounds that you filed a motion on. So I don't understand how, I guess what you're asking us is to ignore the fact that they never responded to the substantive because they weren't asked to, and for us to rule on a ground that was never argued below. No, they were asked to present something on the substantive ground. We argued in the court below. Where? I mean, you have three grounds. On those three grounds. Right, okay, so on the standing, let's say standing, they responded on standing. Well, they didn't because they didn't. Well, I mean, you may say they didn't respond sufficiently, but that was a joined issue. It was a joined issue, but there was no, they did not resolve the problem that there was no showing in the complaint. Why are you arguing all this other stuff about the merits when the standing was the issue? Judge Munson, as you have pointed out, said there was no recall violation. And the reason I believe that he did that was that he looked at all the evidence that we had presented, presented for the statute of limitations purposes, and said, you know, there is nothing here before this court to show that money had been transferred illegally to Japan. You're really back, though, and I think your brief takes the right position. You're putting to us, as I understand it, essentially the same arguments you put to the district court in the first instance. The district court may have more broadly ruled on summary judgment, but it seems to me you're trying to defend that position, as you're entitled to, on the alternative grounds that you would initially argue to the district court. And if that's the case, then we're just trying to get you to focus on specifically those narrow arguments rather than defending everything else the district court said. All right. I believe the court has seen that our argument on the derivative and the standing issue. One of the arguments that Mr. Fitzgerald makes in his brief is that we believe that Grisard confuses the issue of his failure to satisfy the requisite elements of the RICO cause of action by arguing, in pages 16 to 20 in his brief, that he should be given the opportunity to prove the amount of his damages. As a matter of law, the Tirada parties relied on the complaint, and as a matter of law, the damages that Mr. Grisard claims in his brief that he should be able to prove at trial do not go to that issue. His failure to prove the element of standing of the fifth element of the RICO claims does not make him an intended target or that he suffered any direct injury, and damages are irrelevant at this stage. Let me separate those two. Direct injury seems to me to be a reference to the argument that this is properly brought as a derivative action, and there's not RICO standing for derivative action. Intended target, I take it, is a somewhat different argument. It relates more to your second of the three arguments. Is that correct? Yes. Focusing on that for a moment, our court had a decision earlier this year by an en banc panel called Diaz v. Gates. It came up after the briefing, so I should inquire as to whether you're familiar with it, because if you're not, I have to say it appears in that decision that our court gave up the direct target requirement as an element of RICO. Understanding that it's a recent decision, are you familiar with that decision? I am not. Okay. See, the Tirada parties did not need to present any evidence at all to negate Mr. Guzzard's allegations of damages, since Mr. Guzzard didn't have standing to assert a RICO claim. So when it's argued that he should be given an opportunity to assert what his damages could be at trial, that was not part of our motion. Had he been able to establish an amount of money damages, that still would not have given him standing. It wouldn't have solved his problem. It would not have solved his problem. He's standing probably. And so what he's offered to solve his problem during argument and in his reply brief is the suggestion that there should be an exception in cases where there's only going to be one minority shareholder affected. Well, yes, he has made that argument. But in this particular case, all of the shareholders, none of the shareholders have received dividends. And what he's really asking for is dividends. He can color it any way he wants. He's asking for dividends. He tries to say that some of the people have already received their money by skimming from the company. And the other people are now unable to bring a lawsuit because the statute of limitations is run. If it can be shown that the statute of limitations has run against them. We don't know that. That was just an allegation that's made. There are no facts in support of that. As this court has pointed out earlier, all of the shareholders have the same rights. And Mr. Grizard should have no further rights to seek money through a legal cause of action. Then he can get from a derivative action filed in the state court, which he has already done. And he's filed that lawsuit in the state court seeking those those damages. He doesn't have any specific right to bring up a legal cause of action against these defendants for their action. It is the corporation that was damaged, not him. It's the corporation that can do so. He doesn't have any specific distinct injury that he has been able to show. The currency transactions, I think, are somewhat important in this. Only because it establishes that there are no violations of law. All of the money that was transported to Japan was properly accounted for. There was no monkey business going on. All of the monies that were borrowed by Suwaso. No, you keep going back to the merits of the case on what your opponent has said. We have evidence to the contrary. We haven't decided. And you keep ignoring the fact that the district court didn't decide the merits. The district court said, in effect, you didn't make out all the elements. And one of those elements is standing. I don't know. You may argue yourself right out of this case before you're through. Based on that comment, thank you very much. If I can focus again on what we're all talking about here. One thing I would like to correct, Mr. Smith said that we claim that Suwaso was the victim. We did not. I tried to tailor that complaint as closely as I could to my understanding of what a valid RICO complaint is. And from my understanding, Suwaso is the enterprise and is the vehicle.  It's just the means that the three defendants used to take the money that belonged to my client. Who is the victim of this? Who is the direct target? Because regardless of what Mr. Smith says, and there was some monkey business, although I don't want to get into details either, but it's unequivocal that at least $1.5 million was siphoned off, and that was divided up by the three defendants. And our point is simply that Suwaso is not the victim, that Grizzard is the only person bringing this claim saying that he didn't get his share. And if you look at the complaint, there's nothing in the complaint that suggests that it's a derivative claim. It describes the actions that were going on, what they were doing to Suwaso, with Suwaso, how they were using Suwaso. But when it comes right down to it, it's an individual injury to my client, Grizzard. And on page five of my reply brief, I cited Fletcher's Cyclopedia of Corporation. It says, if the injury is to one, to the plaintiff as a stockholder, and to him individually, and not to the corporation as where the action is based on the contract to which he is a partner, or on a rent belonging severally to him, or on a fraud affecting him directly, it is an individual action. And I go back to the beginning, how this whole thing started between these three men, Sasho Tenorio Grizzard, four men, and Terada. And the promise that was made, if you help us, Mr. Grizzard, because you know everything about Saipan, if you get us all the things we need and help us, we're going to give you a 10 percent share. And at the deposition of Mr. Terada, he was asked the question, Mr. Grizzard says he was promised a 10 percent share in the company. This is Swaso Company. Did you promise Mr. Grizzard a 10 percent share in Swaso for all the various tasks that he did on behalf of Swaso? Answer, no, I did not. Question, did you promise him anything? No, I didn't. Question, did you promise anyone that they would share in the profits of Swaso? Answer, none. And so even though I signed an affidavit in which Mr. Grizzard subscribed to 10 percent of the Swaso Company, you never intended that he would share in 10 percent of whatever profits the corporation might make. That's correct. And it goes on to talk about how he was asked again, the only reason that you signed my affidavit showing that he had subscribed to 10 percent of the shares was because that was necessary under the law, as you understand it, for you to get a Saipan Corporation. That is correct. And when I established Swaso Corporation, was it your intention that all of the profit that might be made by Swaso Corporation would be retained by you or by Hakumata, his family's company? That's correct. And that's what it is. It was a small company put together by these people. They wanted Grizzard's help because he knew Saipan. He promised to do it. They promised him a 10 percent share. He never got it. Thank you. The case of Grizzard v. Terada is submitted. And I thank both counsel for argument, also for coming so far from Saipan. We're next going to hear argument in
judges: Bright , McKeown, Clifton